IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RODNEY JAMES-BEY, SR., #203530,   )
                                   )
            Plaintiff,             )
                                   )
    v.                             )        CASE NO. 2:11-CV-67-TMH
                                   )              [WO]
                                   )
CYNTHIA DILLARD, et al.,           )
                                   )
            Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.  INTRODUCTION AND PROCEDURAL HISTORY

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed by Rodney James-Bey, Sr. ["James-Bey"], an indigent state inmate.[1]  In his complaint, James-Bey alleges that his initial parole consideration date was improperly delayed from December 1, 2004 until February 14, 2006.  James-Bey further challenges the constitutionality of the decision to deny him parole issued by the Alabama Board of Pardons and Paroles on July 29, 2009 and the subsequent four year set-off date assigned for his next parole consideration.  The defendants are Cynthia Dillard, the Executive

---

[1] The plaintiff executed the complaint on September 16, 2010.  The law is well settled that a pro se inmate's complaint is deemed filed the date it is delivered to prison officials for mailing.  *Houston v. Lack,* 487 U.S. 266, 271-272 (1988); *Adams v. United States*, 173 F.3d 1339, 1340-1341 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  "Absent evidence to the contrary in the form of prison logs or other records, [this court] must assume that [the instant complaint] was delivered to prison authorities the day [James-Bey] signed it...."  *Washington v. United States*, 243 F.3d 1299, 1301 (11th Cir. 2001).  In light of the foregoing, the court considers September 16, 2010 as the date of filing.

Director of the Alabama Board of Pardons and Paroles; Bill Wynn, Bob Longshore and Cliff Walker, members of the Alabama Board of Pardons and Parole; Troy King, the former Attorney General for the State of Alabama; and Miriam Shehane, a member of Victims of Crimes Against Leniency.[2]  James-Bey seeks a declaratory judgment regarding the constitutionality of Alabama's parole procedures and the lack of criteria governing suitability for release on parole.  *Complaint - Doc. No. 1* at 15.[3]

The defendants filed special reports, supported by relevant evidentiary materials, addressing James-Bey's claims for relief.  Pursuant to the orders entered in this case, the court deems it appropriate to treat these reports as motions for summary judgment.  *Order of February 22, 2012 - Doc. No. 39*.  Thus, this case is now pending on the defendants' motions for summary judgment.  Upon consideration of such motions, the evidentiary materials filed in support thereof and James-Bey's response in opposition to the motions,

---

[2]Ms. Shehane is a private citizen who acts as an advocate for VOCAL, a private association devoted to the protection of victims' rights and unaffiliated with any state agency.  James-Bey argues Ms. Shehane was transformed into a state actor because she conspired with other state actors to deprive him of his constitutional rights.  *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 186 (1980) ("[T]o act under color of state law for (Section) 1983 purposes does not require that the Defendant be an officer of the State.  It is enough that [she] is a willful participant in joint action with the State or its agents.").  However, "[f]or purposes of 42 U.S.C. § 1983, the plaintiff must plead in detail, through reference to material facts, the relationship or nature of the conspiracy between the state actor(s) and the private persons.  *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984)."  *Harvey v. Harvey*, 949 So.2d 1127, 1133 (11th Cir. 1992).

[3]In *Wilkinson*, two state prisoners brought claims seeking relief that would "render invalid the state procedures used to deny parole eligibility ... and parole suitability...."  544 U.S. at 82.  The Court held that these claims were "cognizable under § 1983, i.e., they do not fall within the implicit habeas exception[]" because neither of the claims for relief "would necessarily spell speedier release...."  *Id*.  Thus, the relief sought by James-Bey in his complaint is properly before this court in a 42 U.S.C. § 1983 action.

the court concludes that the defendants' motions for summary judgment are due to be granted.

## II.  STANDARD OF REVIEW

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed.R.Civ.P. Rule 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").[4]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine issue [- now dispute -] of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by showing that the

---

[4]Effective December 1, 2010, Rule 56 was "revised to improve the procedures for presenting and deciding summary-judgment motions." Fed.R.Civ.P. 56 Advisory Committee Notes.  Under this revision, "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word -- genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination." *Id*. "'Shall' is also restored to express the direction to grant summary judgment." *Id*. Thus, although Rule 56 underwent stylistic changes, its substance remains the same and, therefore, those cases citing the prior versions of the rule remain equally applicable to the current rule.

nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-324.

The defendants have met their evidentiary burden and demonstrated the absence of any genuine dispute of material fact.  Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists.  *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed.R.Civ.P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents or other materials] the court may ... grant summary judgment if the motion and supporting materials -- including the facts considered undisputed -- show that the movant is entitled to it.").  A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor.  *Greenberg*, 498 F.3d at 1263.

In civil actions filed by inmates, federal courts

must distinguish between evidence of disputed facts and disputed matters of professional judgment.  In respect to the latter, our inferences must accord deference to the views of [parole] authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage.

*Beard v. Banks*, 548 U.S. 521, 530, 126 S.Ct. 2572, 2578, 165 L.Ed.2d 697 (2006) (internal citation omitted).  Consequently, to survive the defendants' properly supported motion for

summary judgment, James-Bey is required to produce "sufficient [favorable] evidence" which would be admissible at trial supporting his claims for relief. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); Rule 56(e), *Federal Rules of Civil Procedure*. "If the evidence [on which the nonmoving party relies] is merely colorable ... or is not significantly probative ... summary judgment may be granted." *Id*. at 249-250. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576-1577 (11th Cir. 1990). Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment. *Holifield*, 115 F.3d at 1564 n.6 (A plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("[M]ere verification of party's own conclusory allegations is not sufficient to oppose summary judgment...."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985) ("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a

plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248; *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004) ("Only factual disputes that are material under the substantive law governing the case will preclude entry of summary judgment."). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some

metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine dispute of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323-324 (Summary judgment is appropriate where pleadings, evidentiary materials and affidavits before the court show there is no genuine dispute as to a requisite material fact.); *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor.).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *Beard*, 548 U.S. at 525, 126 S.Ct. at 2576; *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, the plaintiff's *pro se* status alone does not mandate this court's disregard of elementary principles of production and proof in a civil case. In this case, James-Bey fails to demonstrate a requisite genuine dispute of material

fact as is necessary to preclude summary judgment.  *Matsushita*, *supra*.

## III.  RELEVANT MATERIAL FACTS

In 1999, James-Bey was convicted of murder and sentenced to twenty years imprisonment for this conviction.  At the time James-Bey filed the instant complaint, he had been considered for parole on two occasions, February 14, 2006 and July 20, 2009, but denied parole after each parole consideration hearing.  The record demonstrates that the denial of parole occurred because James-Bey failed to persuade members of the parole board that he is an acceptable risk for release on parole. *State Defendants' Exhibits C, E and G in Support of Special Report - Court Docs. No. 14-3, 14-5 and 17-1.*

## IV.  DISCUSSION

James-Bey asserts that the parole defendants violated his constitutional rights when they failed to conduct his initial parole consideration hearing within his serving a third of his sentence, 6 years and eight months, and instead delayed this consideration date "until February 14, 2006 a total of 8 years and a half." *Complaint - Doc. No. 1* at 9.  James-Bey also complains that during the 2006 and 2009 parole consideration hearings defendants King and Shehane challenged his release on parole and in so doing provided parole board members information from his pre-sentence report with respect to aggravating circumstances of the murder, information James-Bey alleges is false. *Id*. at 9-10. James-Bey further maintains that the defendants (i) denied him due process, (ii) relied on false

information in denying him parole, (iii) deprived him of equal protection, (iv) acted arbitrarily and capriciously in determining the dates of his consideration hearings and denying him parole, and (v) conspired to effectuate the denial of parole. *Complaint - Doc. No. 1* at 9-14.    Finally, James-Bey complains that *Ala. Code* § 15-22-26 is unconstitutionally vague as it vests "too much power" in the parole board by awarding its members unbridled discretion in determining whether to release an inmate on parole Board. *Plaintiff's Response in Opposition - Doc. No. 52* at 2.  Under applicable federal law, these claims entitle James-Bey to no relief from this court.

## A.  Claims Barred by the Statute of Limitations

In their special report, the defendants argue that any claims related to the initial parole consideration hearing held on February 14, 2006 are barred by the two-year period of limitations applicable to complaints filed under 42 U.S.C. § 1983. *State Defendants' Special Report - Doc. No. 14* at 10-12.  Upon review of the pleadings filed in this case, it is clear that those claims arising from adverse parole actions or decisions which occurred on or before September 15, 2008 are barred by the statute of limitations.

> All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the §1983 action has been brought. *Wilson v. Garcia*, 471 U.S. 261, 275-76, 105 S.Ct. 1938, 1946-47, 85 L.Ed.2d 254 (1985).  [The plaintiff's] claim was brought in Alabama where the governing limitations period is two years. Ala. Code § 6-2-38; *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989) (en banc).  Therefore, in order to have his claim heard, [the plaintiff is] required to bring it within two years from the date the limitations

period began to run.

*McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008).  The statute of limitations begins to run when "'the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights.'"  *Calhoun v. Alabama Alcoholic Beverage Control Board,* 705 F.2d 422, 425 (11th Cir.1983) (quoting *Reeb v. Economic Opportunity Atlanta, Inc.,* 516 F .2d 924, 930 (5th Cir.1975)).   A section 1983 action therefore accrues when the plaintiff knows or has reason to know of the underlying claim.  *Calhoun*, 705 F.2d at 424.

As previously noted, *infra* n.1, the earliest date that the instant complaint could be deemed to have been filed is September 16, 2010.  By its express terms, the tolling provision of *Ala. Code* § 6-2-8(a) provides no basis for relief to James-Bey from application of the time bar.[5] James-Bey knew or had reason to know of the facts underlying his claims for relief immediately from the time of the consideration set-off in December of 2004 and upon entry of the denial of parole in February of 2006.  The claims on which James-Bey seeks to proceed regarding the initial parole consideration proceedings clearly occurred on or before March 1, 2006.

Based on the uncontroverted facts of this case, James-Bey has no legal basis on which to proceed with respect to any claims that arose on or before March 1, 2006 as he

---

[5]This section allows tolling of the limitation period for an individual who "is, at the time the right accrues ... insane...."  *Ala. Code* § 6-2-8(a).  The pleadings filed herein demonstrate that James-Bey was not legally insane at the time of the challenged event so as to warrant tolling under *Ala. Code* § 6-2-8(a).

filed this cause of action more than four years after these alleged violations accrued. In light of the foregoing, the court concludes that James-Bey's challenges to actions taken against him on or before March 1, 2006 are barred by the applicable statute of limitations, and the defendants are therefore entitled to summary judgment on these claims.

### B. Due Process - The 2009 Hearing and Denial of Parole

James-Bey asserts that defendants Dillard, Wynn, Longshore and Walker deprived him of fair consideration for parole in violation of his due process rights as the decision to deny parole arose from flagrant and unauthorized acctions. *Complaint - Doc. No. 1* at 10. In support of this assertion, James-Bey complains that the parole defendants denied him due process in determining his suitability for release on parole when they (i) failed to act in accordance with laws and regulations addressing parole eligibility, setting of parole consideration dates and scheduling of parole hearings, (ii) considered adverse information provided by the Attorney General and a victim's rights advocate without verifying the validity of the information, (iii) refused to consider statements provided by his family members, (iv) did not allow him to attend the parole hearing to dispute the aggravating circumstances surrounding his offense, and (v) utilized his prison disciplinary record in the decision-making process. James-Bey's claims arising from an alleged lack of due process with respect to the parole consideration process and resulting denial of parole entitle him to no relief.

11

"The Alabama [parole] statute ... calls for discretionary rather than mandatory action on the part of the board.  The law directs the board to consider a number of factors in making their determination, which is a subjective rather than objective determination.  It does not contain any language that mandates parole . . . .  When the statute is framed in discretionary terms there is not a liberty interest created . . . .  Alabama parole statutes do not create a liberty interest [in parole] . . ." *Thomas v. Sellers*, 691 F.2d 487, 489 (11th Cir. 1982).  A review of the history of the Alabama statute governing release on parole establishes that from its inception the statute has been framed in discretionary terms.[6]  The law is well settled that "the mere possibility of parole provides simply 'a hope that is not protected by due process . . . .' [In addition], the Alabama parole statute frames the Parole Board's authority in discretionary terms, and thus does not create for Alabama prisoners a protected liberty interest in the expectation of parole.  *See Thomas v. Sellers,* 691 F.2d 487 (11th Cir. 1983)." *Ellard v. Alabama Bd. of Pardons and Paroles*, 824 F.2d 937, 942 (11th Cir. 1987).

Despite conceding that there is no protected liberty interest in parole, James-Bey

---

[6]Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.

contends that the parole board's regulation governing parole set-off dates creates a protected liberty interest in the procedures related to parole consideration.  James-Bey alleges that this provision creates a protectable expectancy in parole consideration at the regulated set-off time and, therefore, the consideration process must comport with due process.  This claim is foreclosed by *Slocum v. Georgia State Board of Pardons and Paroles*, 678 F.2d 940 (11th Cir.), *cert. denied*, 459 U.S. 1043 (1982), in which the Eleventh Circuit deemed such a "unique theory ... without merit."  678 F.2d at 942.  The relevant portion of the Court's opinion reads as follows:

> Petitioner argues that even if there is no statutorily created liberty interest in parole, particular [statutory parole] provisions ... create a protectable entitlement to parole consideration.  Specifically, petitioner cites the requirement ... that parole consideration "shall be automatic" upon the expiration of a set period of confinement and language ... that the board include in the parole file "as complete information as may be practically available...."  If these provisions create a protectable expectancy in parole consideration, petitioner argues that the consideration must comport with due process standards.  Petitioner's unique theory is without merit.  Unless there is a liberty interest in parole, the procedures followed in making the parole determination are not required to comport with standards of fundamental fairness.  *See Brown v. Lundgren*, 528 F.2d 1050 (5th Cir.), *cert. denied*, 429 U.S. 917, 97 S.Ct. 308, 50 L.Ed.2d 283 (1976).  In *Staton v. Wainwright*, 665 F.2d 686 (5th Cir. 1982) (former Fifth Circuit decision), the court concluded that no liberty interest in parole was created by the Florida statutes.  The court, therefore, rejected appellant's claim that his due process rights were violated when he did not receive an initial parole interview within the time required under the parole laws.  The analysis in *Staton* was adopted by the Eleventh Circuit in *Hunter v. Florida Parole and Probation Commission*, 674 F.2d 847 (11th Cir. 1982), where the court held that no due process violation could be shown through an allegation that the Florida Parole and Probation Commission improperly calculated a prisoner's "presumptive

> parole release date."   Accordingly, in the instant case petitioner['s] ... allegation that the ... parole board has not accorded him adequate parole consideration does not entitle him to [relief].

*Slocum*, 678 F.2d at 942.

James-Bey does not possess a liberty interest in being granted parole that is protected by the Due Process Clause of the Constitution.  *Heard v. Georgia State Board of Pardons and Paroles*, 222 Fed. Appx. 838, 840 (11th Cir. 2007); *Monroe v. Thigpen*, 932 F.2d 1437, 1441 (11th Cir. 1991); *Ellard*, 824 F.2d at 941-942; *Thomas*, 691 F.2d at 488-489.  Absent the existence of a constitutionally protected liberty interest in parole, "the procedures followed in making the parole determination are not required to comport with the standards of fundamental fairness."  *O'Kelley v. Snow*, 53 F.3d 319, 321 (11th Cir. 1995); *Slocum*, 678 F.2d at 942; *Orellana v. Kyle*, 65 F.3d 29, 32 (5th Cir. 1995) (because applicable Texas parole statutes confer "no liberty interest in obtaining parole" Texas inmate could not "complain of the constitutionality of procedural devices attendant to parole decisions.").  Thus, the procedural due process protections of the Fourteenth Amendment do not apply to either the parole decision making process, *Thomas*, 691 F.2d at 488-489, or the parole consideration process.  *Slocum*, 678 F.2d at 942 (failure to provide parole review within time required under parole rules or properly calculate presumptive date of release on parole does not constitute a violation of due process).

Moreover, to the extent the complaint can be construed to challenge the

constitutionality of setting and/or delaying a parole consideration hearing past the time mandated by governing administrative regulations, such action likewise does not run afoul of the Constitution.   Federal courts no longer ascertain whether a state created a constitutionally protected liberty interest by parsing language of statutes and regulations to determine if the language was "of an unmistakably mandatory character" placing "substantive limitations on official discretion" but must instead look to the nature of the deprivation to determine if a state created a liberty interest. *Sandin v. Conner*, 515 U.S. 472, 483-484 (1995).  As previously noted, an Alabama inmate has no liberty interest in parole protected by the Due Process Clause.   Although "States may under certain circumstances create liberty interests which are protected by the Due Process Clause[,]... these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, ... nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.*  "Since an inmate is normally incarcerated in prison, [the plaintiff's remaining in prison while awaiting parole consideration] did not impose atypical and significant hardship on him in relation to the ordinary incidents of prison life and, therefore, did not deprive him of a protected liberty interest." *Asquith v. Department of Corrections*, 186 F.3d 407, 412 (3rd Cir. 1999).

Nevertheless, even though there is no liberty interest involved, a parole board may not engage in "flagrant or unauthorized action." *Thomas*, 691 F.2d at 489. The parole defendants maintain they acted in accordance with state law and applicable administrative regulations when scheduling James-Bey's 2009 parole consideration hearing and denied parole to James-Bey because they were not persuaded he presented an acceptable risk for release on parole. The decisions of the parole board members with respect to James-Bey demonstrate reasonable and appropriate actions, *Hendking v. Smith*, 781 F.2d 850, 853 (11th Cir. 1986), rationally related to the legitimate state interest of ensuring that only those inmates best suited for parole are actually granted this privilege. *Cf. Conlogue v. Shinbaum*, 949 F.2d 378 (11th Cir. 1991); *see also Thornton v. Hunt*, 852 F.2d 526 (11th Cir. 1988). James-Bey has simply failed to present any evidence indicating arbitrary or capricious actions on the part of the Alabama Board of Pardons and Paroles or its board members. Consequently, summary judgment is due to be granted in favor of the defendants with respect to each of James-Bey's due process claims.

## C.  Equal Protection

James-Bey, an African American inmate convicted of murder, asserts that the parole defendants violated his right to equal protection by delaying his second parole consideration date and denying him parole when other inmates convicted of less serious crimes have received timely consideration and/or have been granted parole. *Complaint -*

16

*Doc. No. 1* at 12-13 ("Violent offenders are ... under a stricter scrutiny" than non-violent offenders. Violent offenders "should be treated in the same manner as all other prisoners for parole consideration.... [The prole defendants] are discriminating against the plaintiff based solely upon the type of offense plaintiff has."). James-Bey further alleges that white inmates with violent offenses are more likely to be granted parole than are black inmates with similar violent offenses. *Plaintiff's Response in Opposition - Doc. No. 52* at 10.[7]

To establish a claim cognizable under the Equal Protection Clause, "a prisoner must [at a minimum] demonstrate that (1) he is similarly situated to other prisoners who received more favorable treatment; and (2) the state engaged in invidious discrimination against him based on race, religion, national origin, or some other constitutionally protected basis. *Jones v. Ray*, 279 F.3d 944, 946-47 (11th Cir. 2001); *Damiano v. Florida Parole and Prob. Comm'n*, 785 F.2d 929, 932-33 (11th Cir. 1986)." *Sweet v. Secretary, Department of Corrections*, 467 F.3d 1311, 1318-1319 (11th Cir. 2006). "[O]fficial action will not be held unconstitutional solely because it results in a ... disproportionate impact.... Proof of ... discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Village of Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 264-265 (1977). "'Discriminatory purpose' ... implies more than intent as

---

[7]In support of this assertion, James-Bey directs the court to the parole decisions issued in the cases of Mark Daniel Melvin, a white inmate, and Willie James Henry, an African-American inmate. Melvin was convicted of murder for the brutal murder of an elderly couple he committed at the age of 14, whereas Henry was convicted of murder for participating in a drive-by shooting at the age of 18 which resulted in the death of two teens. The parole board granted Melvin parole while denying parole to Henry.

volition or intent as awareness of consequences.  It implies that the decision maker ... selected ... a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (footnote and citation omitted); *see also Hernandez v. New York*, 500 U.S. 352, 359 (1991).  In a case such as this one, where the plaintiff challenges actions of parole officials, exceptionally clear proof of discrimination is required.  *Fuller v. Georgia Bd. of Pardons and Paroles*, 851 F.2d 1307, 1310 (11th Cir. 1988).  Evidence which merely indicates disparity of treatment or even arbitrary administration of state powers, rather than instances of purposeful or invidious discrimination, is insufficient to show discriminatory intent. *McKleskey v. Kemp,* 481 U.S. 279, 292, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, James-Bey bears the burden of producing evidence which would be admissible at trial sufficient to show that the actions of the defendants during his parole consideration process resulted from intentional discrimination.  *Celotex*, 477 U.S. at 322-324; *Waddell*, 276 F.3d at 1279.  The plaintiff cannot rest on conclusory allegations of a constitutional violation to defeat summary judgment nor is "[t]he mere existence of a scintilla of evidence in support of [his] position" sufficient to avoid summary judgment. *Anderson*, 477 U.S. at 252; *Waddell*, 276 F.3d at 1279 (conclusory allegations based solely

on subjective beliefs are insufficient to oppose summary judgment).  Instead, the law is clear that the plaintiff must present significant probative evidence of intentional discrimination to preclude summary judgment in favor of the defendants.  *Anderson*, 477 U.S. at 249.

Initially, the court concludes that James-Bey's claim of discrimination based on the violent nature of his offense provides no basis for relief as this assertion does not implicate any constitutionally protected interest.  Moreover, any adverse action taken due to an inmate's conviction for a violent offense is not violative of equal protection as such is rationally related to the legitimate state interest of preventing the early release of serious offenders.  *Conlogue*, 949 F.2d at 380; *Thornton*, 852 F.2d at 527.  Additionally, it is not a denial of equal protection to classify violent offenders differently from other prisoners. *See  Hendking v. Smith*, 781 F.2d 850, 852 (11th Cir. 1986).  In light of the foregoing, the court concludes that the actions about which James-Bey complains regarding differential treatment of violent offenders do not rise to the level of an equal protection violation. *Conlogue*, 949 F.2d at 380.

With respect to James-Bey's claim of racial discrimination, the defendants adamantly deny they undertook any action in James-Bey's parole consideration process based on race or any other constitutionally impermissible reason.  *State Defendants' Exhibits C, E and G in Support of Special Report - Court Docs. No. 14-3, 14-5 and 17-1.*

19

In addition, the defendants maintain that the denial of parole was based solely on their determination that James-Bey was not suitable for release on parole. *Id*. James-Bey has utterly and completely failed to present evidence, significantly probative or otherwise, that race or some other constitutionally impermissible factor constituted a motivating factor in the actions of the defendants about which he complains. Other than James-Bey's self-serving, conclusory allegation that the defendants violated his equal protection rights, the record is devoid of admissible evidence that the defendants acted in an intentionally discriminatory manner. The allegations presented by James-Bey do not warrant an inference of discriminatory intent as the showing of a disparate impact upon inmates is insufficient to demonstrate an equal protection violation. *Sweet*, 467 F.3d at 1319; *E & T Realty*, 830 F.2d at 1114-1115; *Horner v. Kentucky High School Athletic Ass'n*, 43 F.3d 265, 276 (6th Cir. 1994). Moreover, the arbitrary application of administrative rules and/or state laws does not constitute a violation of the Constitution. *E & T Realty*, 830 F.2d at 1114. James-Bey has therefore failed to establish a violation of his equal protection rights with respect to the parole consideration process or the decision to deny parole. Thus, the defendants are entitled to summary judgment on the equal protection claim arising from alleged racial discrimination.

### D.  False Information

James-Bey asserts that defendants King and Shehane violated his right to due

process when they submitted alleged false information at his parole hearing.  *Complaint -*

*Doc. No. 1* at 10.  He further complains that the parole defendants deprived him of due

process when they relied on this information to deny him parole.  *Id*.  The defendants do

not admit that the information utilized in the parole decision-making process is false and

categorically deny any knowing submission of or reliance on false information.  *State*

*Defendants' Exhibits C, E, F and G in Support of Special Report - Court Docs. No. 14-3,*

*14-5, 14-6 and 17-1*; *Defendant Shehane's Exhibit 1 in Support of Special Report - Doc.*

*No. 38* at 2.

In *Monroe v. Thigpen*, 932 F.2d 1437 (11th Cir. 1991), the Court held that reliance

on ***admittedly false information*** to deny a prisoner consideration for parole was arbitrary

and capricious treatment violative of the Constitution.  The appellate court, however,

carefully distinguished its holding in *Monroe* from its prior decision in *Slocum*.

> Our holding today does not conflict with our earlier holding in *Slocum*,
> *supra*.  In *Slocum*, the plaintiff, who had been denied parole, made the
> conclusory allegation that the Board must have relied upon erroneous
> information because otherwise the Board would surely have granted him
> parole.  *Slocum*, 678 F.2d at 941.  The plaintiff then sought to assert a due
> process right to examine his prison file for the alleged errors.  Unlike the
> instant case, in *Slocum* the state did not admit that it had relied upon false
> information in denying parole nor did the plaintiff present any evidence that
> his prison file even contained any false information.  We held in *Slocum* that
> prisoners do not state a due process claim by merely asserting that erroneous
> information may have been used during their parole consideration.  *Id.* at
> 942.  We also determined that prisoners do not have a due process right to
> examine their prison files as part of a general fishing expedition in search of
> false information that could possibly exist in their files.  *Id*.  In the case at

> bar, we are confronted with prison authorities who admit that information contained in Monroe's files is false and that they relied upon such information, at least in part, to deny Monroe parole and to classify him as a sex offender.  As we stated, the parole statute does not authorize state officials to rely on knowingly false information in their determinations. *Thomas [v. Sellers]*, 691 F.2d [487] at 489 [(11th Cir. 1982)].

*Monroe*, 932 F.3d at 1442.  *Slocum* controls the disposition of the instant false information claim.

The defendants maintain that the information submitted to the parole board at the parole hearing and on which board members relied to deny James-Bey parole is correct and reliance on this information therefore did not violate the plaintiff's constitutional rights. Specifically, there is no admission by the defendants that the information utilized in denying James-Bey parole is false, incorrect or erroneous.  James-Bey has failed to come forward with any evidence which indicates the defendants knowingly submitted or relied on false information during the parole consideration process.  Moreover, James-Bey's conclusory assertion regarding false information does nothing more than raise the possibility that information in his records may be false, and this mere possibility fails to provide a basis for relief. *Monroe*, 932 F.2d at 1142; *Jones v. Ray*, 279 F.3d 944 (11th Cir. 2001) ("[P]risoners cannot make a conclusory allegation regarding the use of [false] information as the basis of a due process claim.").

The record in this case establishes that the defendants did not provide or rely on ***admittedly*** false information during the parole consideration process.  Consequently, the

22

plaintiff is entitled to no relief as a matter of law and entry of summary judgment in favor of the defendants is appropriate.

## E.  Constitutionality of State Statute

Section 15-22-26 of the Alabama Code governs the authority of the Alabama Board of Pardons and Paroles to grant parole to inmates.  The pertinent portion of this statute reads as follows:

> No prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the Board of Pardons and Paroles is of the opinion that there is reasonable probability that, if such prisoner is released, he will live and remain at liberty without violating the law and that his release is not incompatible with the welfare of society....

*Ala. Code* § 15-22-26.  James-Bey complains that this section of the Alabama Code is unconstitutionally vague as it provides complete discretion to the parole board in determining which inmates to release on parole and thereby allows the potential for members to act in an arbitrary and capricious manner.

The statute challenged by James-Bey does not address constitutional freedoms or identify unlawful conduct but merely sets forth the standards members of the parole board must follow prior to granting an inmate parole.  Upon application of the void-for-vagueness doctrine, the court concludes that the challenged code section is not unconstitutionally vague.  "A rule that does not reach constitutionally protected conduct is void for vagueness only if it is impermissibly vague in all its applications.  *Hoffman*

23

*Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499, 102 S.Ct. 1186, 1193, 71

L.Ed.2d 362 (1982).  The test is whether the enactment is substantially incomprehensible.

*Exxon Corp. v. Busbee,* 644 F.2d 1030, 1033 (5th Cir. May 1981), *cert. den.*, *Exxon Corp.*

*v. Georgia Assn. of Petroleum Retailers*, 454 U.S. 932, 102 S.Ct. 430, 70 L.Ed.2d 239

(1981)." *Woodruff v. United States Dept. of Labor, Office of Workers Compensation*

*Program*, 954 F.2d 634, 643, *rehearing denied*, 961 F.2d 224 (11th Cir. 1992).  The statute

at issue is substantially comprehensible with respect to establishing the standards for

release of inmates on parole.  The guidelines set forth in § 15-22-26 "provide explicit

standards for those who apply them" and "give the person of ordinary intelligence a

reasonable opportunity to know what is [required]." *Grayned v. City of Rockford,* 408 U.S.

104, 108, 92 S.Ct. 2294, 2298-2299, 33 L.Ed.2d 222 (1972).  The mere fact the statute

provides for utilization of discretion and reliance on personal opinion does not render it

impermissibly vague or arbitrary.  As the Alabama Supreme Court correctly determined:

> [The inmate] contends that § 15-22-26 is unconstitutionally vague on
> its face or as it is administered by the Board of Pardons and Paroles. "A
> statute that does not concern First Amendment freedoms or the definition of
> criminal conduct may be declared unconstitutionally vague 'only if a person
> of ordinary intelligence, exercising common sense, can derive no rule or
> standard at all from the statute's language.' *Friday v. Ethanol Corp.*, 539
> So.2d 208, 213 (Ala.1988)." *State v. Blake*, 642 So.2d 959, 962 (Ala.1994).
> Section 15-22-26 is a typical parole statute that gives the parole board total
> discretion in the granting of paroles. *Tedder v. Alabama Bd. of Pardons &*
> *Paroles*, 677 So.2d 1261, 1263 (Ala.Crim.App.), *cert. denied*, 518 U.S. 1008,
> 116 S.Ct. 2531, 135 L.Ed.2d 1054 (1996); *see also Thomas v. Sellers*, 691
> F.2d 487, 488-89 (11th Cir. 1982).  Because the statute provides that parole

24

may be granted at the board's discretion, it does not confer a liberty interest in parole that is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution. E.g., *Tedder,* 677 So.2d at 1263. The discretion granted to the parole board by § 15-22-26 does not, however, make the statute vague; rather, it gives the board the authorty to consider each parole application individually.

> Section 15-22-26 ... is not unconstitutionally vague on its face or as it is administered by the board; [the inmate's] contentions are meritless.

*Thompson v. Board of Pardons and Paroles*, 806 So.2d 374, 375 (Ala. 2001).

The Alabama parole statute governing standards for parole of inmates is a typical parole statute which vests total discretion in the Alabama Board of Pardons and Paroles. *Ellard*, 824 F.2d at 942; *Thomas*, 691 F.2d at 489. There is nothing unconstitutionally vague about the statute. Moreover, the Alabama parole scheme has been reviewed by the Eleventh Circuit Court of Appeals on numerous occasions with that court acknowledging the constitutionality of the discretion accorded the Alabama Board of Pardons and Paroles and continuously stressing "that absent flagrant or unauthorized action by a parole board the discretionary power vested in a parole board will not be interfered with by the Federal courts." *Thomas*, 691 F.2d at 489.

### F.  Conspiracy

James-Bey alleges that defendants King and Shehane engaged in a conspiracy with defendants Dillard, Wynn, Longshore and Walker which resulted in the denial of parole. "Conspiring to violate another person's constitutional rights violates section 1983. *Dennis v. Sparks,* 449 U.S. at 27, 101 S.Ct. at186 (1980); *Strength v. Hubert,* 854 F.2d 421, 425

25

(11th Cir.1988), *overruled in part on other grounds by Whiting v. Traylor,* 85 F.3d 581, 584 n.4 (11th Cir.1996)." *Rowe v. City of Fort Lauderdale*, 279 F.3d 1271, 1283 (11th 2002). "To prove a 42 U.S.C. § 1983 conspiracy, a plaintiff 'must show that the parties "reached an understanding" to deny the plaintiff his or her rights [and] prove an actionable wrong to support the conspiracy.' *Bendiburg v. Dempsey*, 909 F.2d 463, 468 (11th Cir.1990), *cert. denied,* 500 U.S. 932, 111 S.Ct. 2053, 114 L.Ed.2d 459 (1991).... [T]he linchpin for conspiracy is agreement...." *Bailey v. Board of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). In order for a plaintiff "to establish the 'understanding' or 'willful participation' required to show a conspiracy, ... [he] must [produce] some evidence of agreement between the defendants.... For a conspiracy claim to survive a motion for summary judgment '[a] mere "scintilla" of evidence ... will not suffice; there must be enough of a showing that the jury could reasonably find for that party.' *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990)." *Rowe*, 279 F.3d at 1283-1284. Merely "stringing together" adverse acts of individuals is insufficient to demonstrate the existence of a conspiracy. *Harvey*, 949 F.2d at 1133.

The parole defendants deny they conspired with any other party to violate James-Bey's constitutional rights and, instead, argue that they acted appropriately at all stages of the parole consideration process. Defendants King and Shehane likewise deny acting in

concert with members of the parole board or each other to deny James-Bey his constitutional rights.  The court has carefully reviewed the pleadings filed by the plaintiff. There is a total lack of evidence to support James-Bey's suppositious theory that the defendants engaged in various conspiratorial acts against him.  Specifically, James-Bey has failed to present any evidence which demonstrates that the defendants "reached an understanding" to violate his rights or committed an "actionable wrong to support the conspiracy." *Bailey*, 956 F.2d at 1122; *Bendiburg*, 909 F.2d at 468.  At best, James-Bey's assertions are purely conclusory allegations which fail to establish the material facts necessary to sufficiently plead a conspiracy between the defendants.  *Harvey*, 949 F.2d 1133; *Fullman*, 739 F.2d at 556-557.  Thus, James-Bey has failed to produce any probative evidence of a conspiracy and the motions for summary judgment filed by the defendants are due to be granted regarding this claim.  *Bailey*, 956 F.2d at 1122.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motions for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  The costs of this proceeding be taxed against the plaintiff.

It is further

ORDERED that **on or before February 5, 2014**, the parties may file objections to this Recommendation.  Any objections filed must clearly identify the findings in the Magistrate Judge's Recommendation to which the party is objecting.  Frivolous, conclusive or general objections will not be considered by the District Court.  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982).  *See Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982).  *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981, *en banc*), adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Done this 22nd day of January, 2014.


_____/s/Charles S. Coody_____
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE

28